Franklin A. Warren *et als.* *v.* Bark Benjamin Rush.

November 27, 1861.

---

# SUPREME COURT—IN ADMIRALTY.

---

FRANKLIN A. WARREN *et als.* *vs.* BARK "BENJAMIN RUSH."

To LIMIT the jurisdiction of the Court sitting as a Court of Admiralty under the provisions of the 21st Article of the Treaty with France, in suits brought by foreign seamen, it must appear that the term of service, under their shipping contract, has not yet expired, within the meaning of the decision in Young *vs.* Phillips, (Hawaiian Reports, Vol. 2, page 349.)

The contract being determined by its own terms, the seamen cannot thenceforth be arrested under treaty stipulations upon the Consul's requisition.

The cause of difference giving rise to the suit must relate to the *internal order* of the vessel, and the contending parties be exclusively of the ship's nationality to affect the jurisdiction of the Court, under the provisions of the 21st Article of the French Treaty.

In a suit between American citizens brought to recover wages claimed from an American vessel, the Court adhered to the principle which had been repeatedly declared by the Courts of this Kingdom, sitting as Courts of Admiralty, that they would entertain jurisdiction, where it was for the common benefit and convenience of the parties interested, and when a remission to the distant domestic forum would be attended with great delay and probable loss of material testimony.

Franklin A. Warren *et als. v.* Bark Benjamin Rush.

International comity, in certain cases, requires the Courts of this Kingdom to exercise jurisdiction as a friendly act to the citizens of a friendly nation.

It is incumbent upon the masters or agents of whaleships, to make up, at the expense of the owners, the accounts between the ship and each officer or seaman of the crew, and any usage to the contrary deemed unreasonable and would not be sustained by the Court.

Before Justice ROBERTSON :

This is a libel for mariner's wages, filed by F. A. Warren, Wm. S. Beckwith and George Edwards, late first, second and third mates, respectively, on board of the American whaling bark " Benjamin Rush." The libel sets forth that, in the month of January last, the libellants shipped at Honolulu for service on the "Benjamin Rush," Warren G. Fish, master, for a cruise to the North Pacific Ocean, Warren as the first mate, at the thirtieth lay or share, Beckwith as second mate, at the fortieth lay, and Edwards as third mate, at the fiftieth lay ; that the libellants performed their duty accordingly during the season, and that the ship arrived back at the port of Honolulu on the 7th November, bringing 37,936 gallons whale oil, 15,340 gallons humpback oil, 1,696 gallons sperm oil, and 14,000 pounds whale-bone, as the proceeds of the cruise. The libellants claim that they are now entitled to be paid their respective shares as above stated, the oil and bone being valued at the American Consular rates, and that they have demanded payment from Capt. Fish, and from the agent of the owners in Honolulu.

Messrs. Wilcox, Richards & Co., merchants in Honolulu, and agents of the owners, having full control of the business of the vessel, appear as claimants and respondents. In their answer they admit the contract of shipment set forth in the libel, and the service performed by the several libellants, and that the lays or shares, to which the libellants are entitled, are correctly set forth in the libel, as also the quantity of oil and bone procured during the cruise, but deny that the libellant Warren has failed to procure the payment of his wages, or that the libellants Beckwith and Edwards ever made any demand for their wages upon Capt. Fish, or upon any other person having authority in the matter. They further aver that it is the custom to pay all foreign seamen, from American whaleships, at the United States Consulate ; that a few days before service of process they had received notice from the Consulate to go there

and settle with Warren ; that Mr. Wilcox went there and paid, as the custom is, on the table of the Consulate, all the wages claimed for Warren, and that such wages are at present in the hands of the Consul, subject to the order of Warren, so far as is known to the respondents. And, further, that the libellants have not procured their lawful discharge from the vessel, and therefore have no right to appear in this Court and sue for their wages.

The libellants filed a replication traversing several of the allegations of respondents' answer, but it is unnecessary to recapitulate the several points in detail.

A protest against the Court assuming jurisdiction in this cause was filed by the Consul of the United States for Honolulu, upon two grounds therein set forth, viz : Firstly, that the libellants being citizens of the United States, and still attached to the bark "Benjamin Rush," which is an American vessel, the Consul has the exclusive jurisdiction of the matters and things complained of in the libel, by virtue of the 21st Article of the treaty between this Kingdom and France.

Secondly, that the comity which exists between friendly nations should prevent the Hawaiian Courts from entertaining jurisdiction in cases of claims for wages against the vessels of a friendly foreign nation, especially where such foreign nation has a duly accredited agent here, charged with the duty of taking cognizance of all matters of difference between the masters of such vessels and their crews.

This protest is substantially similar to those filed by the late acting United States Consul, Mr. F. L. Hanks, in the case of Enos *vs.* Sowle, and in that of Young *vs.* Phillips, which were overruled by the full Court after mature deliberation. The protest in this case was likewise overruled, before the hearing of the cause was proceeded with, the Court stating, however, that if anything should be disclosed during the progress of the trial, which in the opinion of the Court, should induce it to decline jurisdiction, the suit would be dismissed. It may be well to state here, briefly, the reasons which led the Court to overrule the Consular protest in the present case. And first, as touching the application of the 21st Article of the treaty with France. The extent to which, in the opinion of the Supreme

Court, the provisions of that Article limit the jurisdiction previously claimed and exercised by the Hawaiian Courts is pretty clearly set forth in the decisions rendered in the cases of Enos *vs.* Sowle, and Young *vs.* Phillips, already referred to. But there appears to be a slight misapprehension as to the meaning of the language used by the Court in the case of Young *vs.* Phillips, in regard to its hesitation to entertain jurisdiction, in suits by foreign seamen, where such seamen are still " attached to the vessel." The Court, in using that language, did not use it in a technical sense, but as it would be used in common *parlance*, as meaning seamen whose term of service had not yet expired, and who are still " attached to the vessel " by their shipping contract. That such was the meaning of the Court is evident from the fact that Young, whose libel was then entertained by the Court, although by implication of law discharged from his contract by the wrongful act of the master, and so regarded as no longer " attached to the vessel," had not been formally discharged before a United States Consul. The libellants in the present case are no longer " attached to the vessel " within the meaning of the decision in Young *vs.* Phillips. After the expiration of the eight " lay days " stipulated for in their contract, counting from the date of the ship's arrival in port, they were no longer attached to that vessel by contract for service. That contract was then determined by its own terms, and the libellants could not thenceforth be arrested, under treaty stipulations, upon the Consul's requisition, as seamen owing service to the " Benjamin Rush."

But, further, and what is more to the point, the 21st Article of the treaty with France, in giving exclusive jurisdiction to the Consul, over " matters of difference," arising between the masters, officers and crews of the ships of his country, where the contending parties are all of the ship's nationality, expressly confines that jurisdiction to matters relating to the " internal order " on board of such ships. Now the cause of difference which gave rise to this suit has not the most remote connection with the " internal order," or government, on board of the " Benjamin Rush," nor with the regulation of the station or duty of any one bound to the vessel by contract for service as master, officer or seaman.

Franklin A. Warren *et als. v.* Bark Benjamin Rush.

It is clear, therefore, that the question of jurisdiction is not affected by the provisions of the French treaty, but stands precisely as if that treaty had never existed. But the Consular protest takes the ground that even in that view of the case, this Court ought not to exercise jurisdiction in a suit between American citizens, brought to recover wages claimed from an American vessel. We have so often had occasion to explain our view upon this subject, that it may seem superfluous to say more in this case than that, in the opinion of the Court, this is precisely one of those cases in which, for the common benefit and convenience of the parties interested, the Court ought to retain jurisdiction, in order that the controversy may be settled and justice be done between the parties, at the most befitting time and in the most convenient forum. The respondents, who are the only parties who can possibly be prejudiced by our entertaining the case, have not shocked our sense of right by asking the Court to decline jurisdiction, and remit the libellants to the Courts of Massachusetts for a hearing.·

This Court is by no means desirous of burdening itself, unnecessarily, with the labor and responsibility of adjudicating the claims of foreign seamen against masters and owners of foreign ships; but would always prefer that they should, if possible, settle those claims out of Court, by the aid and assistance which their Consuls are authorized and required to afford them. But in the present case the libellants entered into the shipping contract at Honolulu, for service on board of the "Benjamin Rush," for one season only, and back to Honolulu, where by express contract the master agreed to discharge them and pay them their wages, taking the value of oil and bone as fixed at the United States Consulate in Honolulu as the basis of settlement. The port of Honolulu thus became the home port of the libellants, and, indeed, so far as regards the settlement of their claim for wages and all its incidents, Honolulu may be looked upon as the home port of the vessel also, for here is an agent and part owner, who has full control of the business of the ship. And as the libellants and the agent of the owners have failed to effect a settlement, with the aid of the Consul, what good reason could be assigned for this

Court refusing to entertain the suit? The libellants, although of the humble class of seamen, are American citizens, temporarily or permanently residing here; and, as was argued with great force and propriety in the case of Young *vs.* Phillips, have the privilege, in all proper cases, of resorting to the Courts of this Kingdom for the protection and enforcement of their rights, in virtue of the treaty between the United States and the Hawaiian Islands. International comity, therefore, if rightly understood and applied, would seem to me to require the Court to exercise its jurisdiction in this case, as a friendly act to the citizens of a friendly nation.

Again, the decision of one of the chief points in the cause, so far as concerns the libellant Warren, has been regarded in the argument as depending upon the existence, or non-existence, of an alleged usage or custom, said to obtain in Honolulu, in relation to the paying off of foreign seamen. The question as to whether or not such a custom does exist here, and if it is so universal, certain, and reasonable, as legally to bind parties to contracts of shipment made or terminated in this Kingdom, is purely a question of Hawaiian municipal law, which can only be adjudicated and decided with the force of authority, upon Hawaiian soil, by a Hawaiian Court of Justice. No agent of a foreign government has power, authoritatively, to adjudge and declare what shall, or what shall not, be considered a part of the internal law of this Kingdom. And if this cause were remitted for trial to the Courts of the United States, it is obvious that this question of alleged custom would have to be adjudicated there at great disadvantage and inconvenience, while any decision rendered there upon this point would have no effect in any future case as against a contrary decision made by our own Courts.

I will now proceed to examine the merits of the case, which lie within a small compass. The contract set forth in the libel; its fulfillment on the part of the libellants; the amount of oil and bone alleged to have been procured during the season; and the lays or shares claimed by the libellants are all admitted by the respondents. The question is, then, why shall the libellants not have judgment?

The respondents say that Warren should not have judgment,

because he has not failed to procure payment of his wages, inasmuch as it is the custom at Honolulu to discharge and pay off all foreign seamen, from American whaleships, at the United States Consulate ; that the respondents received notice from the Consulate to go there and settle with Warren ; that Mr. Wilcox went there accordingly, and there paid, as is the custom, on the table of the Consulate, all the lay or wages claimed for Warren, the respondents being only anxious to do what was right, and being altogether indifferent as to whether they paid Warren at their own office or at the Consulate ; and, further, that the sum so demanded and paid is now in the hands of the Consul, subject to the order of Warren, so far as the respondents know. The libellants, in their replication, traverse several of the averments of this answer. They deny that there is a binding custom here to pay off all foreign seamen from American ships at the office of the Consulate ; and the libellant Warren denies that the respondents have paid any sum of money to the United States Consul, or that any money is now in his hands, for the use of Warren, with his (Warren's) consent or approbation. Upon careful examination, I understand this to be the whole case, as made by the pleadings, between Warren and the respondents, and in giving a decision, I feel bound to confine myself strictly to the issues so made. In regard to the question of the alleged custom of paying off all foreign seamen from American ships at the Consulate, it is clear upon the evidence, in my opinion, that no universal or binding custom to that effect exists in Honolulu. Of course all seamen leaving American ships at this port should be formally " discharged " at the Consulate, but there is no law or custom making it compulsory upon the masters or agents of ships to pay the seamen's wages at the Consulate. The accounts may be adjusted, and the wages paid, at the Consulate, or at any other place where it may suit the convenience of the parties to do so ; but if points of difference arise between the parties, it is the especial duty of the Consul, at the request of either party, I presume, to endeavor to adjust those differences, and to effect a settlement, for which purpose he is invested with a certain amount of authority by his Government.

In reference to the other point affecting the claim of Warren,

viz : as to the placing, by the respondents, of the amount due
to Warren in the hands of the Consul for Warren's use, I am
of opinion that this part of the respondents' answer is sustained
by the proofs. It is proven to my satisfaction, that the amount
due Warren is now in the hands of the Consul, although not
placed there with Warren's consent or approbation. And it
seems to me that under the circumstances, the Court must hold
that the fact of Warren's not having desired or expressly con-
sented to the placing of the money in the Consul's hands, can
not prejudice the defense. The respective parties met at the
Consulate, for the purpose of settling the account of the ship
against Warren, and his claim against the ship for wages ;
several points of difference arose, which were settled by the
intervention of the Consul ; the parties finally agreed upon the
balance due to Warren ; Mr. Wilcox placed a bag containing a
large sum of money in the hands of Mr. Stillman, the Consul's
Clerk, as is usual at that office, and requested him to pay War-
ren's wages ; Mr. Stillman counted out to Warren's agent the
amount due him, less two and a half per cent. commission, said
to be retained as a customary compensation to the Consul, for
the assistance rendered by his Clerk in making up seamen's
accounts ; Warren's agent refused to accept the amount ten-
dered, but the Consul told him the tender was sufficient and
that he could have no more, and so the money remains in the
Consul's office.

Now, it seems to me that the respondents have done all that
could fairly be required of them, in the case of Warren. They
have placed the full amount claimed by Warren in the hands
of the Consul of the United States, before whom, as the pro-
per officer of the common country of these parties, and in
whose Consulate they had adjusted and settled the account be-
tween Warren and the ship, requesting the Consul to make
payment accordingly ; and the Consul has assumed the respon-
sibility, officially, of withholding a part of the money due to
Warren, in the shape of a commission claimed as payable at
his office, for extra-official services. Therefore, the fact that
Warren has failed to procure payment of his wages is not at-
tributable to the default of the respondents. They may fairly
be considered to have made payment of his claim, so far as
their legal responsibility extends.

Franklin A. Warren *et als. v.* Bark Benjamin Rush.

In connection with this part of the case, testimony has been adduced to show that a practice has prevailed in Honolulu for a number of years past, of deducting from the wages of seamen, whether paid to them through the clerk of the Consulate, or at the office of a commission agent, two and a half per cent., as compensation to the party employed to make up their accounts. On the part of the defense it is contended that this is a binding usage or custom at this port. Strictly speaking, this question is not formally put in issue by the pleadings in the cause. But as it has been discussed at length by counsel for both parties, I have no hesitation in expressing my opinion, that the usage is so unreasonable that it ought not to be sustained by the sanction of a judicial decree. In my opinion it is clearly incumbent upon the masters, or agents of whaleships, to make up, at the expense of the owners, the accounts between the ship and each officer or seaman of the crew. As these officers and seamen receive wages in the shape of a proportionate share of the ship's catchings, and as many months generally elapse before a settlement, during which time a running account for advances to the crew is kept by the master, it is obvious that all the facilities for ascertaining the wages due to each individual, as well as the amount owing by him to the ship, are in the hands of the master or agent of the vessel. To require every seaman, then, to make up his account with the vessel, or to hire a third party to do it for him, would seem to me exceedingly unreasonable ; and had the wages of Warren been placed by the respondents in the hands of any private party employed to make up their account, and such private party had assumed to withhold any part of it, in the shape of a commission, without Warren's consent, I would feel it my duty at once to enter a decree in his favor, against the respondents, for the full amount of his claim. But, as I have said before, his money is in the official custody of the Consul of his own country, and if any part of it is withheld, the responsibility rests upon that officer and not upon the respondents. As to Warren, therefore, the libel will be dismissed.

The only point which requires to be noticed, as set up on the part of the defense, against the right of the libellants Beckwith and Edwards to a judgment, is that, as the respondents

Franklin A. Warren *et als. v.* Bark Benjamin Rush.

aver, these libellants made no demand for their wages, before commencing suit, which averment is traversed by the libellants.

It appears that the libellants, as they had a perfect right to do, authorized Mr. R. H. Stanley, by power of attorney in due form, to make a settlement of their claims for wages, and of their accounts, with the master or agent of the ship. In pursuance of this authority, Mr. Stanley, as he has testified, called repeatedly upon the ship's agent and requested a settlement, informing him that he was authorized to settle on behalf of the libellants, but without success. He states that he also requested Captain Fish to settle the claims of the libellants, but that he told him Mr. Wilcox, the agent, had the ship's business in charge. Mr. Stanley testifies further, that he presented himself at the United States Consulate, for the purpose of procuring a settlement for the libellants, and that the Consul refused to hear him, on the ground that he declined to permit any member of the legal profession to appear at the Consulate and intervene in such settlements, but did permit him to settle there for Warren, who was unable to be present in person. The testimony of Mr. Stanley is not controverted, except by the averment of the answer, which, in general terms, says the libellants made no demand. I understand that to mean merely that the respondents, under the advice of counsel, aver upon oath that no legally binding demand was made by the libellants. It is argued that because Mr. Stanley did not demand payment, on behalf of the libellants, of any precise sum as due to them, that therefore his request for a settlement did not amount to a sufficient demand in law. In my opinion it would be unreasonable to hold that he should have demanded a precise amount of money, while as yet the amount actually due the libellants was a matter for adjustment with the agent of the ship, who declined to make such adjustment. It is argued further that a sufficient demand in law was not made, because the attorney of the libellants did not present and read his written authority, or tender it to Mr. Wilcox for him to read. In my opinion, such formality was not necessary in a case like this, unless requested, and I regard the reply made by Mr. Wilcox to Mr. Stanley, at the Consulate, as a positive refusal to settle with

him, for the libellant, and an express waiver of what, under the circumstances, would seem to have been a useless formality, the presentation of his power of attorney. It seems to me that a sufficient demand was made, and that, after their unsuccessful efforts to effect an amicable settlement, the libellants had but one course left, and that was to libel the ship.

The matter will be referred to the Registrar, to assess the amount due the libellants Beckwith and Edwards, allowing all proper items of set off, and decree will be entered in favor of these libellants, for such amount, with costs.

Mr. Montgomery, for complainants.

Mr. Harris, for claimants.